FILED
CLERK

9/17/2013 9:26 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
MA SALAZAR, INC.

                  Appellant,

      -against-

INCORPORATED VILLAGE OF ATLANTIC
BEACH.

                  Appellee.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
12-CV-3458 (ADS)

**APPEARANCES:**

**Lester & Associates, P.C.**
*Attorneys for the Appellant*
600 Old Country Road
Suite 229
Garden City, NY 11530
    By:   Robert J. Lester, Esq., Of Counsel

**Miranda Samburksy Slone Sklarin Verveniotis LLP**
*Attorneys for the Appellee*
240 Mineola Boulevard
Mineola, NY 11501
    By:   Michael Anthony Miranda, Esq.
           Maurizio Savoiardo, Esq.
           Robert E. B. Hewitt, III, Esq., Of Counsel

**Office of US Trustee**
*Attorneys for the United States Trustee*
560 Federal Plaza
Central Islip, NY 11722
    By:   Stan Yuon Yang, Esq., Of Counsel

**SPATT, District Judge**.

      Presently before the Court is an appeal by the Appellant-Debtor MA Salazar, Inc. ("the Debtor") of an order entered by the United States Bankruptcy Court for the Eastern District of New York, dated June 14, 2012, denying the Debtor's motion pursuant to 11 U.S.C. § 362(k) and 11 U.S.C. § 362(a) seeking sanctions against the Appellee-creditor Incorporated Village of

1

Atlantic Beach ("the Village"). For the reasons set forth below, the appeal is granted in part and denied in part.

## I.  BACKGROUND

The Debtor is the owner of a parcel of real property located at 2035 Park Street, Atlantic Beach, New York ("the Property"). The Property was improved and contained a mixed use commercial and residential building ("the Building"). On July 6, 2011, following a trial conducted in the Village of Atlantic Beach Justice Court, the Debtor was found guilty of maintaining unsafe premises in violation of the New York State Property Maintenance Code, Chapter 1, Section 107.1.1.

On September 26, 2011, the Debtor filed an order to show cause in Supreme Court, Nassau County seeking a temporary restraining order ("TRO") prohibiting the demolition of the Building. Justice Roy S. Mahon denied the request for a TRO, reasoning that the Building had "fallen into a state of disrepair" and that the Village properly stopped the Debtor's attempts to repair the structure because "it was discovered that the extent of the disrepair rendered the project unsafe." The Debtor neither appealed the order denying the request for a TRO nor sought an interim stay from the Appellate Division.

On October 14, 2011, the Debtor filed a voluntary petition for Chapter 11 Bankruptcy. Section 362(a)(1) of the Bankruptcy Code provides that the filing of a bankruptcy petition creates an automatic stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title. . . ." 11 U.S.C. §362(a)(1). Indeed, the Debtor concedes that the "filing of its Petition was necessitated by the pending demolition of the Building by the Village." (Debtor Brf, at 2.)

2

On October 21, 2011, the Village's mayor, Stephen R. Mahler, sent a letter to the Bankruptcy Court stating that the Village was "mindful of [the automatic] stay and will . . . delay demolition" of the Debtor's Building, but sought leave to disconnect the utilities in furtherance of its efforts. Thereafter, the Bankruptcy Court issued an order authorizing the Village to discontinue utility service to the Building and allowing the Debtor to either consent to the demolition of the Building or erect a fence surrounding the Building (the "Fence Order"). The Fence Order stated that "after 5:00 p.m. on October 21, 2011, it will be unlawful for any person to enter, remain or reside on the [Debtor's] Property." Furthermore, the Fence Order obligated the Debtor, in the event that it became aware of any person entering, remaining, or residing on the Property after 5:00 p.m. on October 21, 2011, to "take all steps necessary to remove them from the property." The Fence Order has not been appealed and the statutory time to do so has expired. On October 25, 2011, the debtor filed an affirmation attesting to the fact that a fence had been erected around the Building.

On November 10, 2011, the Village moved for "the entry of an Order vacating the Stay in effect herein preventing the Inc. Village of Atlantic Beach from demolishing a building owned by petitioner located at 2035 Park Street, Atlantic Beach, New York." The Debtor opposed the motion.

On November 28, 2011, the Bankruptcy Court held a hearing; granted the Village's motion; and instructed the Village to "submit an order" to that effect. At the hearing, the Bankruptcy Court opined that the case was "a poster child" for the "police and regulatory power" exception to the automatic stay provision of the Bankruptcy Code. The Bankruptcy Court reasoned that the "stay [was] inapplicable for the reasons set forth in [the Village's] papers." Notably, at the hearing, neither party made reference to the Fence Order.

3

Less than 24 hours later, with the Fence Order still in effect and without a formal order regarding the automatic stay, the Village entered onto the property and began the demolition of the Building. On November 30, 2011, the Village completed demolition of the Building. The Village never submitted a proposed order regarding the automatic stay to the Bankruptcy Court.

Rather, on December 19, 2011, the Debtor submitted a proposed order to the Bankruptcy Court requesting that the automatic stay be vacated. On December 27, 2011, the Bankruptcy Court entered an order that "the automatic stay is vacated to the extent requested in the Motion so as to allow the Village to demolish the structure located on the Debtor's Property." This order has not been appealed and the time to do so has expired.

On January 16, 2012, the Debtor brought a motion pursuant to 11 §U.S.C. §362(a) and 11 U.S.C. §362(k) seeking sanctions against the Village for violating the automatic stay and to hold the Village in contempt for violating the Fence Order. The Village opposed the motion.

On April 16, 2012, the Bankruptcy Court stated on the record "the [Village's] action was within the police power and, therefore, the automatic stay did not apply." The Bankruptcy Court also expressed reservations about sanctioning the Village for violating the automatic stay as the Bankruptcy Court "didn't think the circuit allows [the Bankruptcy Court] to find that [the Village is] in violation of the stay." The Bankruptcy Court observed that 11 U.S.C. §362(k) authorizes recovery of damages for individuals, not corporations such as the Debtor.

With regard to the alleged violation of the Fence Order, the Bankruptcy Court stated that

> [t]he problem is that the fencing order, as pointed out by – by the city, whether intentionally or not, doesn't allow me to hold somebody in contempt because it didn't require anybody to do or not do anything. It was either inartfully drafted or whatever it was." The Bankruptcy Court further stated that "whatever was in my mind, if it's not on paper in a contempt action, I can't hold someone responsible for either my ability to clearly define what should be in an order or someone else's failure to have the order specific. Contempt is very specific. That order has to unequivocally put folks on notice that if you do A, B, and C, I'm holding

4

you in contempt.  It's not where they have to extrapolate and say, I think the judge meant this.

On June 13, 2012, the Bankruptcy Court seemed to suggest that the automatic stay had been lifted, rather than that the stay never applied in the first instance.  Specifically, in relation to the Fence Order, the Bankruptcy Court asked counsel for the Debtor whether "the fence being put up to protect [the Building] then prevent[ed the Village] from exercising its rights where the Court had already . . . agreed that the stay <u>should be lifted</u>?" (Emphasis added).  At the same hearing, the Bankruptcy Court also found that the Fence Order "was [designed] to preserve the property in the current format and to ensure that nobody could be hurt.  It didn't clearly say enough to sanction the Village for it, that <u>even though the stay was lifted</u> they were prevented from exercising their rights." (Emphasis added).

As an additional reason to deny the Debtor's motion for sanctions against the Village, the Bankruptcy Court explained that "there was no order that one could hold [the Village] in contempt of relative to the [section] 362 because it was signed after the building was gone."

Eventually, on June 14, 2012, the Bankruptcy Court entered a written order denying the Debtor's motion for sanctions.  The Order simply stated that "[the Debtor]'s motion seeking sanctions against the Village is denied."  The Bankruptcy Court also noted on the record that imposing sanctions with respect to the Fence Order would not be equitable because that order was ambiguous as to the issue of demolition.  The Debtor subsequently appealed the June 14, 2012 order to this Court.

Subsequent to the above events, but relevant to the appeal, on July 18, 2012, the Bankruptcy Court held a hearing and read into the record a decision dismissing the Debtor's bankruptcy case.  At that hearing, the Court noted that "on June 14th, 2012, determining the Village did not violate the automatic stay – excuse me – did violate the automatic stay, but

5

declined to award sanctions." On July 20, 2012, the Bankruptcy Court dismissed the Debtor's bankruptcy petition.

## II. DISCUSSSION

A. Standard of Review

A district court hearing an appeal from a bankruptcy court reviews that court's findings of fact under the "clearly erroneous" standard, see Fed. R. Bankr. P. 8013, while its conclusions of law are reviewed under the de novo standard. In re Vouzianas, 259 F. 3d 103, 107 (2d Cir. 2001); In re Arochem Corp., 176 F.3d 610, 620 (2d Cir. 1999) (holding that "we review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law de novo") (citation omitted); In re Bennett Funding Group, Inc., 146 F.3d 136, 138 (2d Cir. 1998) (same) (citations omitted); see also In re Porges, 44 F.3d 159, 162 (2d Cir. 1995) (same) (citations omitted).

"On appeal, a district court 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'" In re McNally, No. 02-CV-85, 2003 U.S. Dist. LEXIS 25856, at *3 (S.D.N.Y. June 2, 2003) (citing Fed. R. Bankr. P. 8013).

B. The Parties' Arguments

The Debtor maintains that its commencement of the bankruptcy action triggered an automatic stay. The Debtor asserts that it could not appeal the Bankruptcy Court order until entry of a lift stay order. The Debtor argues that the Village's actions in demolishing the Building prior to entry of the lift stay order foreclosed the Debtor's ability to seek further judicial intervention to stop the demolition of the Building. The Debtor further asserts that while a corporate debtor may not obtain damages under 11 U.S.C. §362(k), a Bankruptcy Court retains

6

the power to find, and sanction for, violations of the automatic stay pursuant to 11 U.S.C. §105(a). The Debtor also contends that the Bankruptcy Court erred in finding that the Village was not in contempt of the Fence Order.

In opposition, the Village contends that it did not violate the automatic stay because no such stay was in effect in the first instance, as the Village was acting pursuant to its police powers. The Village further contends that the Debtor failed to preserve its request seeking sanctions under 11 U.S.C. §105 for violating the automatic stay. The Village also asserts that, in any event, it cannot be sanctioned for violating the automatic stay as it did not act with maliciousness or bad faith. Finally, the Village asserts that it did not violate the Fence Order.

C. As to Whether the Village Should have been Sanctioned in Proceeding with the Demolition without submitting an order to the Bankruptcy Court

11 U.S.C. §105(a) gives the court authority to "sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." The applicability and use of §105(a) is typically left to the bankruptcy court. See Adams v. Zarnel (In re Zarnel), 619 F.3d 156, 172 (2d Cir. 2010) (citing In re Morgan, 182 F.3d 775, 780 (11th Cir. 1999)).

Here, the Debtor fails to show that a theory based on the imposition of sanctions pursuant to 11 U.S.C. §105 with respect to the automatic stay was properly before the Bankruptcy Court. See Lewis v. Morris, 06-CV-15510, 2007 WL 2875255 (E.D. Mich. Sept. 28, 2007)(deeming unpreserved trustee's request for sanctions under 11 U.S.C. §105(a)).

"Where a bankruptcy appellant has failed to raise and preserve an objection during bankruptcy proceedings, [the appellant] cannot raise it on appeal." In re Kassover, 268 B.R. 698, 702 (S.D.N.Y. 2001), aff'd sub nom., Kassover v. Gibson, 29 Fed. Appx. 747 (2d Cir. 2002) (citing In re Blackwood Associates, L.P., 153 F.3d 61, 67 (2d Cir. 1998)). In such cases, the

7

Court will not consider an unpreserved issue unless failure to do so will result in manifest injustice. See In re Lionel Corp., 29 F.3d 88, 92 (2d Cir. 1994); In re Macrose Indus. Corp., 186 B.R. 789, 802 (E.D.N.Y. 1995). In this case, no such manifest injustice is apparent and therefore the Court declines to consider whether sanctions were warranted under 11 U.S.C. §105(a) with respect to the automatic stay. In re Regal Cinemas, Inc., 213 Fed. Appx. 369, 376 (6th Cir. Nov. 29, 2006) (unpublished) (finding that where party failed to raise an issue before the bankruptcy court, that argument is properly disregarded).

Alternatively, the Debtor contends that the Bankruptcy Court retained its inherent authority to sanction the Village for violating the automatic stay which, in the Debtor's view, was in place at the time of the demolition. "Federal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients. [The] court's inherent power to sanction derives from the fact that courts are vested, by their very creation, with power to impose submission to their lawful mandates." In re Plumeri, 434 B.R. 315, 327–28 (S.D.N.Y. 2010) (quotations and citations omitted). "Inherent-power sanctions ordinarily require a clear showing of bad faith on the part of the party to be sanctioned. Imposition of sanctions under a court's inherent powers requires a specific finding that an attorney acted in bad faith, and inherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." Id. at 328 (citations and quotations omitted). A court may infer bad faith where the action was "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." See Salovaara v. Eckert, 222 F.3d 19, 35 (2d Cir. 2000) (quotations omitted) (discussing sanctions under 28 U.S.C. §1927).

Here, the Court need not discern whether the Bankruptcy Court lifted the automatic stay or rather held that the automatic stay never applied in the first instance, and the separate question of whether any such ruling was proper. Instead, the Court only considers whether the Village acted in bad faith in proceeding with the demolition notwithstanding its failure to submit an order regarding the automatic stay as required by the Bankruptcy Court. It appears the Bankruptcy Court did not consider the issue of bad faith, but rather declined to award sanctions with respect to the automatic stay on the ground that there was no formal prior order of the court for which the Village could be held in contempt. However, where applicable, "[t]he automatic stay provisions of 11 U.S.C. §362 are 'specific and definite' orders of the court." In re Hammett, 28 B.R. 1012, 1019 (E.D. Pa. 1983). In other words, the absence of a formal order regarding the automatic stay did not preclude the Bankruptcy Court from sanctioning the Village for proceeding with the demolition without submitting a proposed order regarding the automatic stay. For these reasons, the Bankruptcy Court is directed to clarify whether it lifted the automatic stay or the stay never existed in the first place. Relatedly, the Bankruptcy Court is directed to consider whether, pursuant to its inherent authority, it should have sanctioned the Village for proceeding with the Demolition in that fashion, and more specifically, whether the Village acted in bad faith.

D.  As to Whether Debtor Should Have Been Held in Civil Contempt of the Fence Order

It is generally held that a party is in contempt of court if (1) there is a "specific and definite" order of the court which that party has violated and (2) the party had actual knowledge of that order. See, e.g., Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47 (2nd Cir. 1976), cert. denied, 429 U.S. 1093, 97 S. Ct. 1107, 51 L. Ed. 2d 540 (1977); United States

9

v. Christie Industries, Inc., 465 F.2d 1002 (3d Cir. 1972); In re Mealey, 16 B.R. 800 (Bkrtcy. E.D. Pa. 1982); In re Norton, 15 B.R. 623 (Bkrtcy. E.D. Pa.1981).

As noted above, the Bankruptcy Court determined that the Fence Order was not sufficiently specific and definite and thus the Village was not in civil contempt of that order in proceeding with the demolition without a formal order revoking or otherwise limiting the order. It appears that the Bankruptcy Court rendered this determination under both 11 U.S.C. §105(a) and its inherent authority.

The Fence Order stated that "after 5:00 p.m. on October 21, 2011, it will be unlawful for any person to enter, remain or reside on the [Debtor's] property." The Village contends that the Fence Order did not expressly prohibit demolition. Rather, the Village asserts that it was under the impression that the Fence Order was designed solely to make the property as safe as possible until the hearing on the automatic stay. However, in the Court's view, the Fence Order was sufficiently specific and definite in its terms. Furthermore, it is undisputed that the Village received notice of the entry of the Fence Order. Finally, because the demolition necessarily required entry of persons onto the Debtor's property, the Court finds that the Village violated the Fence Order. The Bankruptcy Court's finding to the contrary is reversed. Whether the Bankruptcy Court possessed the authority to issue the Fence Order – and thereby effectively halt demolition efforts – presents a separate question the parties fail to adequately address.

Having found that the Village violated the Fence Order, the Court turns to the question of whether sanctions should be imposed. The Second Circuit has stated that "[t]he Bankruptcy Court's discretion to award sanctions may be exercised only on the basis of the specific authority invoked by that court. Because an award might be based on 'any of a number of rules

10

or statutory provisions,' each 'governed by differing standards,' we have found it 'imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power.'" Solow v. Kalikow (In re Kalikow), 602 F.3d 82, 96 (2d Cir. 2010) (quoting Sakon v. Andreo, 119 F.3d 109, 113 (2d Cir. 1997)).

Even assuming the issue of sanctions under section 105(a) for violating the Fence Order was properly before the Bankruptcy Court, that provision's "equitable scope is plainly limited by the provisions of the [Bankruptcy] Code." In re Smart World Technologies, LLC, 423 F.3d 166, 183 (2d Cir. 2005); New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 91-92 (2d Cir. 2003) (finding §105(a) inapplicable where no provision of the Bankruptcy Code could be invoked to support the appellant's claim for relief). Therefore, absent a violation of the specific provision of the Bankruptcy Code, §105(a) does not provide an independent basis for relief for the Debtor.

However, as previously stated, the Bankruptcy Court retains the inherent authority to enforce its own orders. Therefore, the Bankruptcy Court should determine whether, pursuant to its inherent authority, the Village acted in bad faith in violating the Fence Order.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Debtor's appeal is granted in part, denied in part, and remanded to the Bankruptcy Court for further findings consistent with this Order, namely whether (1) that court lifted the automatic stay or the stay never existed in the first place; (2) that court's inherent authority supported sanctioning the Village for proceeding with the Demolition without submitting a proposed order to that court

regarding the stay; and (3) that court's inherent authority supported sanctioning the Village for violating the Fence Order; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

SO ORDERED.
Dated:    Central Islip, New York
September 17, 2013

                                        *Arthur D. Spatt*
                                        ARTHUR D. SPATT
                                        United States District Judge